Commonwealth *v.* Brown, Appellant.

Argued April 23, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, POMEROY and BARBIERI, JJ.

*Harold Yaskin,* Assistant Defender, with him *John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Victor J. DiNubile, Jr.,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 12, 1971:

Appellant, after a jury trial, was found guilty of corrupting the morals of a minor and assault with intent to ravish. After denial of his post-trial motions, appellant was sentenced to one to five years on the assault with intent to ravish charge and three years probation to follow for corrupting the morals of a minor. Upon appeal to the Superior Court, the judgments of sentence were affirmed. We then allowed the instant appeal.

Appellant's major contention is that the evidence was insufficient as a matter of law to sustain a finding

that appellant possessed the specific intent to ravish. We disagree. The law on this matter is clear: "The Commonwealth need not prove an actual physical attempt to commit rape. . . . There must, however, be evidence legally sufficient to support a finding by the jury that the acts and declarations of [the appellant], as testified to by [the prosecutrix], 'manifested an intention upon his part, not merely to persuade and induce her to accede to his expressed desire to have intercourse with her, but also, in the event of her refusal, to overcome her resistance.'" *Commonwealth v. Shrodes*, 354 Pa. 70, 72, 46 A. 2d 483 (1946).

The evidence presented by the Commonwealth, which was believed by the jury, was as follows: Appellant attempted to engage the services of the sixteen-year-old prosecutrix to help him solicit signatures for anti-Vietnam petitions. Asking her to come with him to his "office," in order to obtain petition forms for her to have people sign, appellant succeeded in duping the young lady into going with him to the second floor of the Parker Hotel, where his "office" allegedly was. Then, as the prosecutrix testified: "A. So we got to his office. He had a key. And he put the key in. I had a lot of books. I had a beaded shoulder bag, and I had my blouse. And he just pushed. Q. Who did he push? A. Me. Q. Where did he push you? A. In the office. Because at that time I had so many books, I mean, I don't know. And his office wasn't an office. Q. Well, what was it when you got inside? A. There was a lamp and a sink, a bed. Q. Jurors can't hear you. A lamp, a sink? A. There was a lamp, a sink, a bed, and I don't know, that's all I know. Q. What kind of push did he give you to get you inside? Did you get inside? A. Yes. Q. What kind of push did he give you? A. (No response.) Q. Where did he push you? What part of your body did he hit? A. Just on my back. Just—I

don't know. I wasn't—Q. What happened when you got inside? A. My books, I had—we had had examinations, I had a lot of books, I had to clean out my locker, and I dropped my books, my bag, but my shoulder bag was—it was still on my shoulder. And he just locked the door. And—Q. Then what happened? A. He told me that he had a gun. He said strip, I have a gun. He didn't say that he was going to shoot me. He said he had a gun. Q. What did you do? A. I started screaming."

Then appellant struggled with the prosecutrix, who finally escaped from the room.

Despite appellant's contentions, when appellant pushed the prosecutrix into the room, locked the door, and ordered her to strip, claiming he had a gun, he was doing more than touching her to induce her into consenting to intercourse. He was indicating that he was determined to have sexual intercourse with her, even if it required force or the threat of force to do so. Under such circumstances, there is no doubt that the evidence was sufficient to support his conviction.

Appellant also alleges that it was error to deny his motion for a mistrial when a Commonwealth witness volunteered irrelevant and prejudicial testimony.

On direct examination, a Commonwealth witness, who had heard the prosecutrix screaming and came to help, testified in part, as follows: ". . . I picked up the phone again and called the owner of the hotel, because at one time I lived there also and worked there. So I talked to the owner of the hotel, and he said he would take care of it. But this guy had tried this several times before."

Appellant's counsel objected and the court agreed that the witness's remark be stricken from the record. The court instructed the jury that they must completely disregard the statement. Appellant's motion for a

mistrial was denied. Appellant argues, on appeal, that even clear, concise comprehensible instructions to the jury could not cure the prejudicial effect of the statement. Although we would agree that sometimes the inadmissible testimony is so dramatic, so emotionally inflammatory, that the jury cannot forget it, even if the court spends a lengthy period instructing them to do so, we do not believe that this is such a case.

Our jury system is predicated on the belief that on most occasions the jury can be relied upon to follow such instructions. We believe, under the circumstances of this case, that the court had every right to trust the jury.

As the Supreme Court said in *Bruton v. United States*, 391 U.S. 123, 135 (1968) : "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. . . . It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information."

Judgment affirmed.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

Although the conduct of the defendant in this case was, beyond cavil, reprehensible, I have serious doubt that the Commonwealth sustained its burden to prove that he possessed the required specific intent to ravish. The statute establishing the crime involved reads: "Whoever commits an assault and battery upon a female, with intent, forcibly and against her will, to have unlawful carnal knowledge of her, is guilty of a felony. . . ." Act of June 24, 1939, P. L. 872, 18 P.S. §4722

(1963). The defendant's bullying threats in this case seem to me more akin to *Commonwealth v. Shrodes*, 354 Pa. 70, 46 A. 2d 483 (1946) and *Commonwealth v. Jaynes*, 137 Pa. Superior Ct. 511, 10 A. 2d 90 (1939) than to *Commonwealth v. Moll*, 142 Pa. Superior Ct. 519, 16 A. 2d 324 (1940) and *Commonwealth v. Heaton*, 145 Pa. Superior Ct. 223, 20 A. 2d 921 (1941).

However that may be, the volunteered statement of the Commonwealth that "this guy had tried this several times before" was, in my opinion, clearly prejudicial. Despite the clear and prompt admonition of the trial judge that this should be disregarded, I think the damage had been done, and that his instruction could not erase the inflammatory effect of this positive assertion of prior offenses. See *Krulewitch v. United States*, 336 U.S. 440, 444-5 (1949). The motion for a mistrial should have been granted, and I would therefore vacate the judgment and remand for a new trial.