## Commonwealth *v.* Paquette, Appellant.

Argued November 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Edward C. Connolly*, with him *Connolly, McAndrews, Kihm & Stevens*, for appellant.

*John Woodcock, Jr.*, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, March 16, 1973:

When the appellant, Edmund Paquette brought his 6½-month old daughter to the emergency room of the Mercy Hospital, on January 31, 1970, she was cyanotic, blue in color, and had no respiration or heartbeat. As the child's life functions returned, bruise marks on her forehead and chin became evident. She died four days later.

The appellant was charged with murder and was tried before a judge, sitting without a jury. He was found guilty of murder in the second degree and, after his post-trial motions were denied, he was sentenced to from five to ten years imprisonment. This direct appeal follows.

The appellant contends that the trial judge erred in denying his demurrer because the Commonwealth's

evidence was insufficient: (1) to show that the wounds he allegedly inflicted caused the baby's death; (2) to show that he was in any way responsible for those wounds; or (3) to establish malice. The appellant contends further that the verdict was against the weight of the evidence. Finally, he contends that the judge who suppressed his extra-judicial statement and who later sat as the finder of fact at the trial erred in allowing the Commonwealth to elicit the contents of that statement at the Suppression Hearing. We find no merit in these contentions.

On appeal from a criminal conviction, the test for sufficiency of the evidence is: "whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Oates,* 448 Pa. 486, 489, 295 A. 2d 337 (1972). See also, *Commonwealth v. Agie,* 449 Pa. 187, 296 A. 2d 741 (1972); *Commonwealth v. Palmer,* 448 Pa. 282, 292 A. 2d 921 (1972); *Commonwealth v. Whitaker,* 440 Pa. 143, 269 A. 2d 886 (1970). We will proceed to examine the evidence of each of the elements challenged by the appellant.

The appellant first challenges the sufficiency of the evidence of the causal connection between his alleged conduct and the victim's death. The attending physician, Dr. Burket, testified that from his examination, the child exhibited traumatic hematomas on both sides of the face, the ears, the lower parts of the jaws and both eyes. She was critically ill, showing evidence of cerebral irritability and definite hindrance of respiratory and circulatory functions. Dr. Adams, a consulting neurosurgeon diagnosed the case as traumatic brain injury with cerebral contusions and blood in the subarachnoid space. Dr. Burket concluded from observa-

tions during the last twenty-four hours of life that the infant died from gradual deterioration of the respiratory function influenced by the cardio-respiratory center in the brain incidental to some type of injury or hematoma. The pathologist who conducted the autopsy testified that pneumonia was the immediate cause of death and that a subdural hemotoma and flakes of blood in the interior of the brain were contributing factors.

A defendant's actions are the legal cause of death if they are a direct and substantial factor in bringing it about. *Commonwealth v. Stafford,* 451 Pa. 95, 301 A. 2d 600 (1973); *Commonwealth v. Johnson,* 445 Pa. 276, 278, 284 A. 2d 734 (1971). This is a stricter test than the "proximate cause" test of tort law, *Commonwealth v. Root,* 403 Pa. 571, 170 A. 2d 310 (1961), and the Commonwealth must prove causation beyond a reasonable doubt. *Commonwealth v. Carn,* 449 Pa. 228, 296 A. 2d 753 (1972); *Commonwealth v. Embry,* 441 Pa. 183, 185, 272 A. 2d 178 (1971); *Commonwealth v. Radford,* 428 Pa. 279, 236 A. 2d 802 (1968).

We are convinced that the evidence here was sufficient to allow a jury to find, beyond a reasonable doubt, that the head injury and resulting hematoma were a direct and substantial factor in the victim's death. The attending doctor diagnosed the baby's condition as critical, and the prolonged comatose state did result in pneumonia and death. Such occurrences are not uncommon. See, *Commonwealth ex rel. Peters v. Maroney,* 415 Pa. 553, 204 A. 2d 459 (1964); *Commonwealth v. Scovern,* 292 Pa. 26, 140 A. 611 (1927). A defendant cannot escape the natural consequences of his act merely because of foreseeable complications. See, *Commonwealth v. Stafford,* supra; *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A. 2d 291 (1966); *Commonwealth v. Williams,* 304 Pa. 299, 156 A. 86 (1931).

The appellant next contends that the evidence was insufficient to connect him in any way with the alleged

head injuries. Admittedly, there were no eyewitnesses to the alleged beating; but the Commonwealth need not prove its case directly. Circumstantial evidence can be as reliable and persuasive as eyewitness testimony. *Commonwealth v. New,* 354 Pa. 188, 47 A. 2d 450 (1946); See I Wigmore §26 (3d Ed. 1940).

There was a dispute between the version of the defense and that of the Commonwealth as to whether or not the child had bruised tissue at the time she was delivered into the custody of the father. Admittedly, the Commonwealth's evidence to support its position that all of the bruising occurred during the time the child was under his exclusive care was weak. This is not controlling, however, since the medical evidence, offered by the Commonwealth, clearly establishes repeated and severe blows to the infant as being the origin of the factors causing death. Such a finding is completely incompatible with the defense's theory that the injuries were either sustained by a fall from the couch to the floor or an epileptic fit while the child was in the bath. Considering the number of bruises, their severity and their positioning about the head and the face, the fact-finder was justified in rejecting the possibility of accidental or self-inflicted injury particularly when recognizing the mobility of a 6½-month old baby.

Where, as here, an adult has sole custody of a child for a period of time, and, during that time the child suffers wounds which unquestionably are neither self-inflicted nor accidental, the evidence is sufficient to allow a jury to infer that the adult inflicted the wounds. *State v. Loss,* 295 Minn. 271, 204 N.W. 2d 404 (1973). See, generally, *Commonwealth v. Johnson,* 162 Pa. 63, 29 A. 280( 1894); *Commonwealth v. Lettrich,* 346 Pa. 497, 31 A. 2d 155 (1943).

The appellant also challenges the sufficiency of the evidence of malice. Legal malice "consists of either an express intent to kill or inflict great bodily harm, or of

a 'wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty,' indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life." *Commonwealth v. Lawrence,* 428 Pa. 188, 193-194, 236 A. 2d 768 (1968). Malice can be inferred from the surrounding circumstances, such as the use of a deadly weapon on a vital part of the body of another human being. *Commonwealth v. Oates,* supra; *Commonwealth v. Palmer,* 448 Pa. 282, 292 A. 2d 921 (1972) ; *Commonwealth v. Commander,* 436 Pa. 532, 260 A. 2d 773 (1970) ; *Commonwealth v. Lawrence,* supra. Malice can also be inferred from the nature of the wounds where the defendant is not using a deadly weapon. Thus, in *Commonwealth v. Steele,* 448 Pa. 518, 295 A. 2d 334 (1972), we held that a jury could infer malice from the fact that the defendant struck his wife, who was ten inches shorter and 40 to 50 pounds lighter than he, so as to fracture five ribs, cause hemorrhaging of the liver, a black eye, and numerous contusions and abrasions of the scalp. In *Commonwealth v. Bowden,* 442 Pa. 365, 276 A. 2d 530 (1971), we allowed a jury to infer malice from the fact that the defendant relentlessly beat his 4'1", 61 pounds stepson with a fifteen-inch stick. Compare, *Commonwealth v. McFadden,* 448 Pa. 277, 292 A. 2d 324 (1972). The evidence indicates that this 6½-month-old infant was beaten brutally and repeatedly so as to bruise the brain tissue. An inference of a callous disregard for human life is clearly warranted under such facts.

The appellant next urges that the verdict was contrary to the clear weight of the evidence. As we have noted above, the Commonwealth produced sufficient evidence to support a verdict of second degree murder. Nevertheless, the appellant argues that the contrary evidence was so overwhelming and convincing as to require an acquittal. We disagree.

The appellant produced two theories concerning the death of his stepdaughter. First, he introduced evidence that on January 28, 1970, the baby fell from a couch to a hardwood floor, bruising her head. As has been stated this theory is contradicted by the medical testimony that the nature and number of bruises on this child were inconsistent with a fall.

The appellant also introduced evidence concerning the deceased's genetic and medical history as well as the appellant's observations of the deceased shortly before the breathing stopped, which allegedly indicated that death resulted from injuries sustained during an epileptic seizure.[1] The appellant's expert, however, had made no personal examination of the child and could testify only as to probabilities. Further, an epileptic seizure of a 6½-month-old baby would hardly be so intense as to result in the wounds that were inflicted in this case. With the evidence in such a state, we cannot say that the judge was required to direct a verdict of acquittal.

On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. *Commonwealth v. Woodhouse,* 401 Pa. 242, 261, 164 A. 2d 98 (1960). To do so would require an assessment of the credibility of the testimony and that is clearly not our function. *Commonwealth v. Sullivan,* 436 Pa. 450, 456, 263 A. 2d 734 (1970) cert. denied, 400 U.S. 882; *Commonwealth v. Schuck,* 401 Pa. 222, 228, 164 A. 2d 13 (1960), cert. denied, 368 U.S. 884 (1961).

---

[1] Relying on the appellant's description of the child just before she was rushed to the hospital, the fact that the deceased's mother was an epileptic and experienced a seizure during the premature birth of the child, the appellant's medical expert testified as to the strong probability that the child would be likely to be subject to epileptic attacks. The record, however, showed that during the brief life span of the child, there had been no manifestations of epilepsy.

The last assignment of error is that the court below erred in allowing the fact-finder to hear the content of the statement which was suppressed. The essence of this objection was directed at the fact that the trial judge also presided during the Suppression Hearing. It is now suggested that this was unduly prejudicial to the appellant since although the confession had been ordered to be suppressed, the trial judge who sat as the finder of fact, was aware of its contents. The record reflects that there was no request that the trial judge disqualify himself for this reason or any other. Further, the appellant did not choose to be tried by a jury which would have eliminated his present complaint. It is clear that as a matter of trial strategy, the appellant chose to proceed with the same judge at trial who had presided and ruled in his favor during the Suppression Hearing. He cannot now be heard to complain. See *Commonwealth v. Corbin,* 447 Pa. 463, 291 A. 2d 307 (1972) ; Cf. *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A. 2d 456 (1972) ; *Commonwealth v. Milliner,* 442 Pa. 537, 276 A. 2d 520 (1971). The better practice in a multi-judge county would be to have the trial conducted by someone other than the judge who presided over the Suppression Proceedings particularly where there is a waiver of jury accepted. *Commonwealth v. Corbin,* supra. See, *Levin, Exclusionary Rules in Nonjury Criminal Cases,* 119 U. of Pa. L. Rev. 905, 918-919 (1971). Here, however, the defense clearly chose to proceed in this manner as a matter of trial strategy, he is not entitled to relief because of his dissatisfaction with the result.

The judgment of sentence is affirmed.