POPOVICH, Justice,
concurring and dissenting.
I cannot join in that portion of the Majority’s opinion which determines that a challenge to the verdict on a “weight of the evidence” ground preserves an issue for appellate review. I would find that it does not, and, accordingly, affirm the judgment of sentence (3 to 6 years imprisonment) for homicide by vehicle while under the influence of alcohol against the Defendant/Appellant, Shawn C. Murray, on a basis other than that proffered by the Majority.
The evidence, viewed in a light most favorable to the verdict-winner, indicates that one Timothy Michael Smith and the Appellant embarked on an evening of “bar-hopping” and alcohol consumption at 6:00 p.m. on the 11th of March, 1988, They began their escapade by including Terry Shockey and Perry Hockenberry.
The first item of business was to have a prescription for Zanax filled. Then a case of 16-oz. Busch beer was purchased before traveling to Hockenberry’s residence. The four remained at this location for approximately an hour *445 before deciding to drive to the Lakeview Inn to shoot pool and drink. When the Appellant and Mr. Smith were “carded” and found to be underage, neither was served and all four left. Undaunted, these four made their way to two other establishments: Pines Tavern and Burnt Cabin Bar. In each instance, the Appellant and Smith were refused service because of their age. However, at this stage of the evening, the Appellant had consumed at least three cans of 16-oz. Busch beer and several of the pills (Zanax) obtained by Mr. Smith from the pharmacist.
With the futile efforts of the Appellant and Smith to get served in any of the public bars, all concerned decided to bring the evening’s activities to a close.
As was the case all night, the Appellant was the driver of his father’s 1973 AMC Hornet stationwagon. Mr. Shockey was a passenger in the front of the vehicle, while Mr. Hockenberry sat behind the Appellant and Mr. Smith rested to the right of Hockenberry.
At the crossroads of Route 75 and Fannettsburg Road, a fifth rider (who had traveled with the group since Pines Tavern) exited the vehicle and the others pressed onward with the Appellant at the helm. The vehicle traveled approximately 4 to 5 hundred feet before running off the roadway into a 3-foot culvert and coming to rest after striking a cement abutment.
The force of the impact caused the front seat to dislodge and pressed the driver and passenger against the dashboard. Mr. Hockenberry was able to exit the rear door and secure help. Even with the arrival of the medical personnel within 15 to 30 minutes of the 12:00 a.m. accident, it was discovered that Mr. Smith had sustained a “blunt trauma” to his skull and died. Also, because of Mr. Smith’s size (about 6 ft. tall and 240 lbs.) and the position his body came to rest inside the vehicle (his head was wedged toward the front of the vehicle near the dash and his feet were toward the right, rear of the vehicle), the front seat had been pushed forward to the point of trapping the Appellant and Shockey where they sat, i.e., the Appellant was pinned *446 behind the steering wheel while Shockey was “jammed” in the right, front corner of the automobile.
The position of Murray and Shockey was precarious in that the “jaws of life”, an hydraulic mechanism, had to be used to open the driver’s door and detach the front seat which had wedged itself against the dashboard such that there was no space between the dash, the victims trapped therein and the front seat.
Two medical personnel described the Appellant as being pinned behind the steering wheel precluding his extrication without the aid of the “jaws of life”. The second gentleman was in the front, passenger seat “jammed up in th[e] corner”.
Jane Kuhn, an emergency medical technician and medic, detected an “odor” of alcohol on the Appellant and found him to exhibit the characteristics of others (some 250 to 300 accident victims) she had found to be under the influence of alcohol.
With the Appellant’s removal from the vehicle, he was “life-flighted” by helicopter to the hospital and treated. Also, blood was drawn and found to contain .14% alcohol. Thereafter, the Appellant was charged with driving while under the influence, homicide by vehicle while under the influence of alcohol and homicide by vehicle, reckless driving.[1] A trial by jury followed in which the Appellant was found guilty as charged. A sentence of 3 to 6 years imprisonment was imposed for homicide by vehicle while under the influence of alcohol. A “Motion In Arrest Of Judgment And For A New Trial” was filed by counsel for the Appellant in which, as is relevant herein, it was alleged at Points 7 and 8, respectively:
The verdicts were against the weight of the evidence in that only testimony from actual personal knowledge regarding the manner in which the subject vehicle was being driven at the time of the accident established that *447 the vehicle was being driven in a normal and safe manner.
The verdicts were against the weight of the evidence in that the only evidence offered on the issue of who was driving the subject vehicle at the time of the accident was circumstantial and counter-balanced by other circumstantial evidence tending to dispute the conclusion that Defendant was the driver, providing that the testimony of Jayne Kuhne [sic] was improperly admitted because of the Commonwealth’s failure to provide full disclosure to Defendant.
In an opinion and accompanying order dated September 15, 1989, the trial court denied the Appellant’s motion for post-verdict relief, and, with regard to Points 7 and 8, found that the contentions were “nothing more than a rehash” of challenges assailing the sufficiency of the evidence found wanting by the trial court. An appeal in forma pauperis to this Court followed, pending which the Appellant was placed on $40,000.00 bail.
In a Pa.R.App.P. 1925(b) statement the Appellant reasserted, inter alia, his Point 7 “against the weight of the evidence” argument. As before, the trial court dismissed the claim as an “attack [on] the decisions of the finders of fact” addressed previously, and, thus, not meriting any additional discussion.
Five issues were argued before and heard by a panel of this Court docketed at No. 745 HBG 1989. With the concurrence of the entire Court, however, the case was certified for en banc consideration to assess whether appellate authority exists to “review challenges to the weight of the evidence”, one of the five issues posited for examination before the initial 3-judge panel.
I find it necessary to address only the “weight of the evidence” argument, and my inquiry begins with Commonwealth v. Paquette, 451 Pa. 250, 301 A.2d 837 (1973), wherein a second degree murder conviction for the beating death of the Defendant’s 6V2-month-old stepdaughter was affirmed.
*448 On appeal, the Defendant contended, inter alia, that the “verdict was against the weight of the evidence”. Before responding to this claim, the Paquette Court held that the evidence was sufficient to allow the finder-of-fact to conclude that the child’s head injury and resultant hematoma were a direct and substantial factor in her death.
Additionally, evidence of causation while in the Defendant’s custody and the presence of motive were deducible from the physical evidence (the attending physician’s testimony to the injuries sustained to vital portions of the victim’s body) to discount the Defendant’s sufficiency of the evidence argument.
In disposing of the “weight of the evidence” argument, the Supreme Court found that the Defendant’s two theories in support thereof (the baby fell from a couch and the genetic history of the infant allegedly indicated that death resulted from injuries during an epileptic seizure) were unsubstantiated by the record, and, therefore, did not require the trial judge to direct a verdict of acquittal. As such, the Court observed:
On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. To do so would require an assessment of the credibility of the testimony and that is clearly not our function.
451 Pa. at 257, 301 A.2d at 841 (Citations omitted).
The rationale in Paquette was re-affirmed in Commonwealth v. Farquharson, 467 Pa. 50, 354 A.2d 545 (1976), which dealt with the Defendant’s (a Dr. Lois Farquharson’s) conviction of conspiring with a Ms. Burnette to shoot a Dr. Weingrad.
Ms. Burnette was the sole witness for the Commonwealth to the events leading to the fatal wounding of Dr. Weingrad, a case predicated against the Defendant on vicarious liability as a consequence of shared criminal intent and the existence of a conspiracy between the Defendant and Ms. Burnette.
*449 The Defendant contended that Ms. Burnette’s testimony was so unreliable and untrustworthy that the jury should have rejected it as not being credible. The jury’s reliance upon such testimony, as argued by the Defendant, justified the award of a new trial. In denying the requested relief, the Supreme Court remarked that:
Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. While there may be some legitimacy for a trial court, who has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury’s determination of credibility, there is surely no justification for an appellate court, relying solely upon a cold record, to exercise such a function.
“On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. To do so would require an assessment of the credibility of the testimony and that is clearly not our function.”
This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that were evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.
467 Pa. at 59-60, 354 A.2d at 550 (Citations omitted).
The Court in Farquharson went on to highlight the difference between Commonwealth v. Bennett, 224 Pa.Super. 238, 303 A.2d 220 (1973), and the evidence confronting it. In Bennett, the testimony of a single individual was held to be so contradictory as to render it incapable of reasonable reconciliation, and, therefore, the verdict could not be sustained. In contrast, in Farquharson, the Defendant’s own version of the events surrounding the shooting, when viewed in conjunction with the admittedly biased account of Ms. Burnette (as the actual perpetrator and her *450 plea of guilty to murder generally where sentence had not yet been imposed), “was sufficient to provide an indicium of trustworthiness to the testimony of ... Burnette on the critical issue sufficient to permit the question to be properly left to the trier of fact. * * * Restated, from the statements of [the Defendant] at trial and to the police upon her arrest, the jury was provided an independent basis for finding that the alleged ... conversation concerning the shooting ... did in fact take place. Thus, the only fact then to be resolved was the position taken by [the Defendant] in that conversation, a fact clearly appropriate for a jury to determine.” Id., 467 Pa. at 63 & n. 11, 354 A.2d at 551-52 & n. 11.
To the same effect, see Commonwealth v. Holmes, 486 Pa. 415, 406 A.2d 510 (1979), wherein the Defendant challenged a victim’s testimony (a Jessie Wallace) as replete with contradictions and omissions, and at odds with other witnesses present during the occurrence leading to the shooting death of Bernard Pette and the wounding of Mr. Wallace by the Defendant.
The Holmes Court conceded that “unreliable and contradictory” evidence, rendering a verdict based thereon pure conjecture, would not be permitted to stand despite the axiom that credibility was entrusted to the fact-finder. Upon a review of the prosecution’s testimony in the case, the court held that “the weight to be given to the testimony of Wallace was properly left to the jury” since it was neither unreliable nor contradictory so as to convert the verdict into a product of conjecture.
Moreover, the Holmes Court found that the asserted contradictions were more fictional than substantive. And, “even accepting the presence of factual discrepancies in the Commonwealth’s evidence,” the Court pointed out that the result sought by the Defendant (a challenge to the sufficiency of the evidence seeking a discharge) was not mandated “since that fact reflected] upon the weight of the evidence not its admissibility.” Id., 486 Pa. at 420 n. 1, 406 A.2d at 512 n. 1, citing Commonwealth v. Kahley, 467 Pa. *451 272, 290, 356 A.2d 745, 754 (1976), cert. denied, 429 U.S. 1044, 97 S.Ct. 746, 50 L.Ed.2d 757 (1977).
The “weight” to be assigned to the testimony is for the finder-of-fact and not a matter of appellate scrutiny. Accordingly, the Defendant’s sufficiency claim, which interjected the unreliability of Wallace’s testimony as the Achillees’ heel of the case, was found to be meritless after a review of the testimony proved sufficient on its face to convict, and any contradictions went to the weight to be assigned the evidence and not its exclusion from the finder-of-fact’s consideration. Cf. Commonwealth v. Brantner, 486 Pa. 518, 522 n. 2, 406 A.2d 1011, 1013 n. 2 (1979) (A weight of the evidence argument questions the jury’s determination of the credibility of the witnesses; there is no justification for an appellate court to exercise such a function).
Consistency in the application of the weight of the evidence argument, as an assessment reserved to the finder-of-fact (which under Farquharson included a trial judge who had observed the witnesses while testifying) was acknowledged by Commonwealth v. Pronkoskie, 498 Pa. 245, 445 A.2d 1203 (1982), a case in which an assault on a first degree murder conviction was made on sufficiency grounds (negative results of a paraffin test) construed as a motion for a new trial claim that the verdict was against the weight of the evidence, a matter committed to the sound discretion of the trial court.
As a prelude to the decision, Farquharson’s admonition against a weighing of the evidence (i.e., substituting an appellate court’s judgment for that of the finder-of-fact) as a credibility assessment in an appellate format was recounted and endorsed, with the caveat that a verdict premised upon surmise or conjecture was not to be tolerated.
The unanimous Court in Pronkoskie concluded that, even assuming conflicting evidence on the question of the negative paraffin test, the jury was free to accept one expert’s opinion (that the gun powder could have been rubbed off to cause the negative results) over that of another (that the *452 powder could not have been removed) in finding the Defendant guilty. Likewise, the Court observed that the negative results of testing for glass or ceramic particles on the Defendant’s clothing went to the weight of the evidence, an argument the review of which was within the trial court’s discretion to evaluate in a post-verdict context.
In dictum, the Court added that such an argument (as to the negative glass and ceramic particles test) was unavailing to undermine evidence of the specific intent to kill. It would have been for the jury to weigh the probative effect of such evidence inasmuch as there was no evidence that the perpetrator would have been likely to come in contact with such particles.
Finally, with Commonwealth v. Nelson, 514 Pa. 262, 523 A.2d 728 (1987), a case in which the Defendant appealed his death sentence for the strangulation of his wife, the Court reaffirmed its longstanding position that the appellate courts are not the finder of the truth, nor is it within their province to assess the credibility of the testimony. See Commonwealth v. Woodhouse, 401 Pa. 242, 261, 164 A.2d 98, 108 (1960).
At trial, the Defendant’s efforts to convince the jury that he acted either in the heat of passion or under a diminished capacity brought on by his consumption of alcohol on the night of the killing, discounting the deliberate and premeditated nature of the homicide, proved to be unpersuasive.
The Court in Nelson responded to the Defendant’s averment that the evidence was not legally sufficient to establish his specific intent to kill by looking to the act itself: When the victim’s life was not extinguished by the assault with a hammer and a chisel, the assailant secured an electric cord to complete the act.
As to the protest that the verdict was against the weight of the evidence, the Court wrote:
Unlike the challenge of legal sufficiency of the evidence, the complaint that the verdict was against the weight of the evidence requires an assessment of the *453 credibility of the testimony offered by the Commonwealth. Commonwealth v. Brantner, 486 Pa. 518, 522 n. 2, 406 A.2d 1011, 1013 n. 2 (1979); Commonwealth v. Farquharson, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). It is a rule of this Commonwealth that an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the “cold record.” Commonwealth v. Pronkoskie, 498 Pa. 245, 445 A.2d 1203 (1982); Commonwealth v. Farquharson, supra; Commonwealth v. Paquette, 451 Pa. 250, 301 A.2d 837 (1973). However, where the penalty of death is imposed we will consider such a complaint.
514 Pa. at 271 n. 3, 523 A.2d at 733 n. 3. Accord Commonwealth v. Wallace, 522 Pa. 297, 314-15, 561 A.2d 719, 728 (1989). Obligated by the imposition of death to address the Defendant’s “weight of the evidence” argument, the Court put into perspective the role of the fact-finder as one endowed with the authority to believe any, all or none of a party’s evidence, be it the prosecution or the defense.
True to such axiom, the Supreme Court refrained from interjecting itself into a credibility assessment mode, a function traditionally reserved to the arbiter-of-fact and “not [to] be disturbed unless the failure to do so would be tantamount to a miscarriage of justice ... [brought about] where the quality and/or quantity of the evidence clearly d[id] not support the verdict____” Id., 514 Pa. at 273, 523 A.2d at 734. Rather, the Court merely examined the allegations proffered (diminished capacity and heat of passion defenses) in a “weight of the evidence” form as a question of credibility rightfully left to the jury, and in a post-verdict forum for the trial judge to resolve. Id.
Absent any indication that the quantum or quality of the evidence was marred so as to convert the verdict to a miscarriage of justice, the judgment of sentence was left intact.
To the extent that this Court has taken it upon itself to respond to challenges on appeal assailing a verdict as being against the weight of the evidence, and looking beyond the *454 admonition in Commonwealth v. Nelson, supra, to the contrary, I view such rulings to be deviations from established case law. See, e.g., Commonwealth v. Badman, 398 Pa.Super. 315, 325-27, 580 A.2d 1367, 1372-73 (1990); Commonwealth v. Pirela, 398 Pa.Super. 76, 83-84 & n. 7, 580 A.2d 848, 852 & n. 7 (1990); Commonwealth v. Jenkins, 396 Pa.Super. 395, 578 A.2d 960 (1990); Commonwealth v. McLean, 396 Pa.Super. 23, 578 A.2d 4 (1990).
It must be recalled that a pure challenge to the weight of the evidence calls into question the judgment of the finder-of-fact necessitating an assessment of the credibility of the witnesses, a function never intended to be performed by an appellate tribunal save in death penalty cases. See Wallace, supra; Nelson, supra; Pronkoskie, supra. But, this weight of the evidence/credibility analysis is to be distinguished from the basic precept that a verdict is not permitted to stand in the face of evidence which, in quality and/or quantity, falls short of the standard of proof necessary to justify a conviction. This determination was never intended by the Pennsylvania Supreme Court decisions to be excised from appellate inquiry. See Pronkoskie, supra; Farquharson, supra.
If the assault upon the verdict is framed as being against the weight of the evidence, the unequivocal language in Nelson, supra, cited with stark clarity in Wallace, supra, would require us to label the matter an “assessment of the credibility of the testimony” presented by the prosecution, an area which an appellate court should refrain from examining. The Majority appears to ignore such a pronouncement.
It is not for Superior Court to minimize a practice described by the Supreme Court as a “rule” which has been followed repeatedly from as early as the 1960 decision in Commonwealth v. Woodhouse, supra, and coming full circle in Wallace, supra.
The Majority’s argument that the Nelson/Wallace cases’ reference to the non-reviewability of a weight of the evi *455 dence claim is of no force or effect because it was dicta is untenable.
In Nelson/Wallace, the Supreme Court was not confronted with a weight of the evidence claim in the sense that it needed to be responded to under traditional preservation/reviewability grounds. Nonetheless, the Court took the occasion to reaffirm its long-standing objection to addressing “weight of the evidence” allegations in the context where challenges to credibility are made, a subject more appropriately reserved for the trier-of-fact.
Moreover, it is beyond cavil that the Nelson Court, but for the imposition of the sentence of death upon the Defendant seeking appellate review, would not have addressed the Defendant’s heat of passion and diminished capacity arguments under the “weight of the evidence” rubric. To the same effect see Wallace, supra, 522 Pa. at 315, 561 A.2d at 728.
Accordingly, I would hold that in those instances where an attack upon the verdict is couched in “weight of the evidence” terms, in contradistinction to a claim that the evidence is so inconsistent and contradictory so as to render the verdict the product of mere surmise or conjecture, no issue is preserved for review under the legend: “Weight of the evidence”. See Wallace, supra; Nelson, supra; Pronkoskie, supra; Commonwealth v. Bennett, 224 Pa.Super. 238, 303 A.2d 220 (1973); cf. Commonwealth v. Holmes, 315 Pa.Super. 256, 461 A.2d 1268 (1983) (en banc) (Boilerplate post-verdict motions challenging the sufficiency and/or weight of the evidence preserve no issue for review). To the extent that the Majority holds to the contrary, I disagree and I would find that, in compliance with the “rule” reaffirmed by the Nelson/WallaceCowct (proscribing review of “weight of the evidence” claims on appeal), the Appellant’s “weight of the evidence” argument succumbs to the Nelson/Wallace prohibition. It reads:
Were the verdicts against the weight of the evidence in that the only testimony from actual personal knowledge regarding the manner in which the subject vehicle was *456 being driven at the time of the accident established that the vehicle was being driven in a normal and safe manner?
I would deem such a contention to be of the type proscribed appellate scrutiny by Nelson/Wallace and its predecessors as a credibility challenge to be resolved by the finder-of-fact and not an appellate tribunal.
I discern a common thread running through the Supreme Court cases touching upon the issue posed for our consideration, i.e., where testimonial or physical evidence exists which, if believed by the trier-of-fact, is sufficient to sustain a verdict, it is not for an appellate court to interpose itself into the weighing of the evidence. The exception exists where the quantity and/or quality of the evidence is such that the verdict is the product of surmise or conjecture. In those instances, an appellate court will not hesitate to involve itself to let justice prevail. See Pronkoskie, supra; Bennett, supra.
Unlike the Majority, I would refrain from doing so at bar because I do not find the preservation of a reviewable issue under the “weight of the evidence” appellation, the underlying allegations of which more appropriately equate with a challenge to the sufficiency of the evidence.
Because the Majority has endorsed the review of a “weight of the evidence” claim, which under the particular facts here I believe to be at odds with the Nelson/Wallace line of cases, I dissent.
CIRILLO and HUDOCK, JJ. join this concurring and dissenting opinion.

. Trial judge found the Appellant guilty of reckless driving.