J-S53036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :      IN THE SUPERIOR COURT OF
                         :                  PENNSYLVANIA
           Appellee         :
                         :
             v.               :
                         :
DINESH BABU MANNEPULI,          :
                         :
           Appellant       :          No. 571 MDA 2015

Appeal from the PCRA Order entered on March 16, 2015
in the Court of Common Pleas of Berks County,
Criminal Division, No. CP-06-CR-0000881-2013

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 22, 2015**

Dinesh Babu Mannepuli ("Mannepuli") appeals from the Order dismissing his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA").  **See** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On October 13, 2012, Mannepuli sexually assaulted R.D. ("the victim"), a nineteen-year-old female, in a shed located outside of her place of employment in Berks County, a beer distributor.  Mannepuli's father and uncle owned the beer distributor.  Two days after the assault, the victim reported it to her general manager, and the victim reported it to the police three days thereafter.  Notably, the victim testified at trial that she did not report the assault sooner because she was fearful of reprisals from her employers (Mannepuli's family members), and of losing her job.

Following Mannepuli's arrest, the Commonwealth charged him with two counts of indecent assault, and one count of harassment.  The matter

proceeded to a jury trial, at which Mannepuli was represented by Jay Nigrini, Esquire ("trial counsel"). The jury found Mannepuli guilty of all counts. In November 2013, the trial court sentenced him to serve three to twenty-three months in the county jail, followed by three years of probation.

Mannepuli timely filed a direct appeal, challenging the weight of the evidence. This Court affirmed. *See Commonwealth v. Mannepuli*, 107 A.3d 235 (Pa. Super. 2014) (unpublished memorandum). Mannepuli did not seek allowance of appeal with the Supreme Court of Pennsylvania.

On October 29, 2014, Mannepuli filed the instant PCRA Petition, alleging, *inter alia*, trial counsel's ineffectiveness. The PCRA court subsequently conducted an evidentiary hearing on the PCRA Petition ("the evidentiary hearing"), wherein trial counsel presented testimony concerning his representation of Mannepuli. By an Order entered on March 16, 2015, the PCRA court dismissed Mannepuli's PCRA Petition. Mannepuli timely filed a Notice of Appeal. In response, the PCRA court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Mannepuli timely filed a Concise Statement.

On appeal, Mannepuli presents the following issues for our review:

> I. Did the honorable trial court err and/or commit an abuse of discretion when it denied a new trial upon review of [] Mannepuli's [PCRA] Petition … on the grounds that trial counsel had a reasonable strategic basis for failing to request the prompt complaint jury instruction, where trial counsel did not state a reasonable, strategic basis for not requesting the prompt complaint jury instruction and conceded [that]

the jury instruction would not have been harmful to []
Mannepuli's case and could have been helpful?

II. Did the honorable trial court err and/or commit an
abuse of discretion when it denied a new trial upon
review of [] Mannepuli's [PCRA] Petition ... on the
grounds that trial counsel's failure to request the
prompt complaint jury instruction was not prejudicial to
[] Mannepuli, because the credibility of the [victim]
was the primary issue of the case, and because trial
counsel conceded [that] the jury instruction would not
have been harmful to [] Mannepuli's case and could
have been helpful?

Brief for Appellant at 4 (some capitalization omitted).

This Court examines PCRA appeals in the light most
favorable to the prevailing party at the PCRA level. Our review
is limited to the findings of the PCRA court and the evidence of
record. Additionally, we grant great deference to the factual
findings of the PCRA court[,] and will not disturb those findings
unless they have no support in the record. In this respect, we
will not disturb a PCRA court's ruling if it is supported by
evidence of record and is free of legal error. However, we afford
no deference to its legal conclusions.

**Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)

(internal citations, quotation marks and brackets omitted).

Both of Mannepuli's issues challenge the PCRA court's rejection of his

claims that trial counsel was ineffective. To prevail on such a claim,

Mannepuli must demonstrate "(1) that the underlying claim is of arguable

merit; (2) that counsel's course of conduct was without a reasonable basis

designed to effectuate his client's interest; and (3) that he was prejudiced

by counsel's ineffectiveness[.]" **Commonwealth v. Wah**, 42 A.3d 335, 338

(Pa. Super. 2012) (citations omitted). The PCRA court may deny an

ineffectiveness claim if the petitioner's evidence fails to meet any of these

prongs. ***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010). Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness. ***Id.***; ***see also Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011) (stating that "[w]hen evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation and internal quotation marks omitted)).

Regarding the first prong of the ineffectiveness test, if the petitioner's underlying claim lacks arguable merit, his or her derivative claim of counsel's ineffectiveness necessarily fails. ***Commonwealth v. Baumhammers***, 92 A.3d 708, 722 n.7 (Pa. 2014). Concerning the second prong, our Pennsylvania Supreme Court has stated that

> [g]enerally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citations, quotation marks and brackets omitted). Finally, to satisfy the prejudice prong, it must be demonstrated that, absent counsel's conduct, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Charleston***, 94 A.3d 1012, 1019 (Pa. Super. 2014).

- 4 -

We will address Mannepuli's issues simultaneously, as they both concern trial counsel's alleged ineffectiveness in failing to request a prompt complaint jury instruction.

This Court has stated that

> [t]he premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. The propriety of a prompt complaint instruction is determined on a case-by-case basis[,] pursuant to a subjective standard[,] based upon the age and condition of the victim.

***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013) (citations and paragraph break omitted); ***see also Commonwealth v. Thomas***, 904 A.2d 964, 970 (Pa. Super. 2006) (stating that "if a complaint is delayed substantially *without any reasonable explanation*, an inference can be drawn regarding the credibility of that complaint and against whether the incident in fact occurred.") (emphasis added, citation omitted).

In challenging trial counsel's failure to request a prompt complaint instruction, Mannepuli divides his Argument into three sections, asserting that he meets all three prongs of the ineffectiveness test. **See** Brief for Appellant at 8-15. Pertaining to the first prong, Mannepuli argues that his claim has arguable merit, *i.e.*, a prompt complaint instruction was warranted under the circumstances, since the victim's "report was not made at the first safe opportunity[.]" **Id.** at 10; **see also id.** (pointing out evidence that the victim did not report the assault to her supervisor until two days thereafter,

and waited five days to inform the police). In support of this claim, Mannepuli relies primarily upon **Commonwealth v. Jones**, 672 A.2d 1353 (Pa. Super. 1996), where this Court reversed the defendant's conviction of rape and remanded for a new trial where the victim did not report the rape until nearly 24 hours thereafter, and the trial court gave an erroneous prompt complaint jury instruction. **See** Brief for Appellant at 10-11.[1]

Under the second ineffectiveness prong, Mannepuli contends that trial counsel had no reasonable strategic basis in failing to request a prompt complaint instruction. **See id.** at 12-14. Mannepuli challenges trial counsel's testimony at the evidentiary hearing that he had thoroughly called into question the victim's credibility, pointing out trial counsel's statement on cross-examination that the prompt complaint instruction "certainly could have been" helpful. **Id.** at 13-14 (quoting N.T., 2/6/15, at 28).

Finally, concerning the third ineffectiveness prong, Mannepuli argues that the lack of a prompt complaint instruction prejudiced him, and affected the outcome of the case, in that "[t]here was not overwhelming evidence of

---

[1] Contrary to Mannepuli's assertion, we find **Jones** to be distinguishable and unavailing. Initially, unlike in the instant case, the victim in **Jones** did not report the assault until after the defendant had taken some of the victim's personal documents, and threatened not to return them unless she gave him money. **Jones**, 672 A.2d at 1355, 1356. More significantly, **Jones** is distinguishable because the trial court in that case did give an *erroneous* prompt complaint instruction, using different language than that set forth in the standard jury instruction. **Id.** at 1357. This Court held that the instruction given did not adequately and clearly present the issue to the jury, and actually bolstered the credibility of the victim, instead of casting doubt upon it. **Id.**

- 6 -

guilt[,]" and "the entire prosecution came down to the credibility of the [victim]." *Id.* at 14.

In its Opinion, the PCRA court addressed Mannepuli's claims, set forth the relevant trial testimony, and that of trial counsel at the evidentiary hearing, and determined that trial counsel was not ineffective for failing to request a prompt complaint instruction. *See* PCRA Court Opinion, 3/16/15, at 4-10. In sum, the PCRA court determined that (1) the victim had a reasonable explanation for her delay in reporting the assault; (2) the delay was not so substantial as to warrant a prompt complaint instruction; (3) trial counsel had cross-examined the victim concerning her failure to report in efforts to undermine her credibility; (4) trial counsel had a reasonable basis for not requesting a prompt complaint instruction; and (5) even if the trial court had given the instruction, it would not have changed the outcome of trial. *Id.* at 9-10; *see also Thomas, supra*. The PCRA court's analysis is supported by the record and the law, and we agree with its determination that trial counsel was not ineffective. Accordingly, we affirm on this basis in rejecting Mannepuli's ineffectiveness claim. *See* PCRA Court Opinion, 3/16/15, at 4-10.

As we conclude that the PCRA court neither abused its discretion nor committed an error of law, we affirm the Order dismissing Mannepuli's PCRA Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2015

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                              : BERKS COUNTY, PA
                          v.                  : CRIMINAL DIVISION
                                              : NO. CP-06-CR-881/013
              DINESH MANNEPULI              : JUDGE THOMAS G. PARISI

John A. Abom, Esquire, PCRA Attorney for the Petitioner
Kenneth Kelecic, PCRA Attorney for the Commonwealth

OPINION AND ORDER, Thomas G. Parisi                          March 16, 2015

After hearing held on the Petitioner's Petition for Habeas Corpus Relief Under Article I, Section 14 of the Pennsylvania Constitution and for Statutory Post-Conviction Relief Under the Post Conviction Relief Act ("PCRA"), pursuant to 42 Pa. C. S. A. § 9541 *et seq.* and his amended petition, this Court finds that the Petitioner is not entitled to relief.

## PROCEDURAL HISTORY

On December 5, 2012, the Petitioner was charged with one count of Indecent Assault (forcible compulsion),[1] one count of Indecent Assault (without consent),[2] and summary Harassment.[3] On March 8, 2013, Attorney Jay M. Nigrini [hereinafter "Trial Counsel"] entered his appearance on behalf of Petitioner. On September 27, 2013, following a jury trial, the Petitioner was convicted of one count of Indecent Assault (forcible compulsion), one count of Indecent Assault (without consent), and one count of Harassment. On November 6, 2013, this Court sentenced the Petitioner to not less than three months nor more than twenty-three months of incarceration, followed by a period of three years probation. On January 16, 2014, the Appellant appealed the outcome of his case, alleging that:

---

[1] 18 Pa.C.S.A. § 3126(a)(2).
[2] 18 Pa.C.S.A. § 3126(a)(1).
[3] 18 Pa.C.S.A. § 2709(a)(1).

1.  The trial court erred in denying Appellant's post-sentence motion that the verdict was against the weight of the evidence in light of the admission of a civil demand letter from the victim's attorney seeking $1.5 million dollars from Appellant's employers.

2.  The verdict was against the weight of the evidence based upon the testimony of numerous witnesses that established the complaining witness lied, evidence that established the complaining witness lied, evidence that established the complaining witness specifically requested to work for the Appellant after she was allegedly molested by the Appellant on two earlier occasions, evidence that established a financial motive to fabricate allegations and evidence that established a legitimate reason for entering the shed where the assault allegedly occurred.

Petitioner's Concise Statement of Matters Complained of on Appeal, 1/16/14.

Pending direct appeal, this Court permitted Petitioner to serve the probationary portion of his sentence, deferring the jail term until after his appeal. The Superior Court of Pennsylvania affirmed on September 24, 2014.

On November 3, 2014, Petitioner filed a Petition for Post-Conviction Collateral Relief Pursuant to 42 Pa.C.S.A. § 9541, *et seq.* Petitioner raises the following claims in his PCRA Petition:

1.  The Petitioner was denied his constitutionally guaranteed right of ineffective assistance of counsel:

    a.  Trial Counsel failed to request the Prompt Complaint jury instruction, despite the Complainant's five (5) day delay in making the allegation, warranting the instruction;

    b.  Trial Counsel failed to call a Megan Witters, a known witness who was under subpoena and present during the first day of trial. Ms. Witters would have testified that she worked at a neighboring business, observed the complainant and Mr. Mannepuli enter the storage shed on the day of the alleged crime but did not hear any scuffle while they were inside nor did she observe the Complainant as upset upon departing the shed;

    c.  Trial Counsel failed to object to the Commonwealth's introduction of prior bad acts evidence consisting of other alleged incidents involving the Complainant;

2

    d. Trial Counsel said in a closing argument "we are here today because Mr. Mannepuli has said I'm not guilty" (N.T. Pg. 243), "There is no way for Defendant to prove to you that it didn't happen other than to be here and say I didn't do it. I'm not guilty." (N.T. Pg. 249-50) and the Complainant "is making allegations no one can disprove" (N.T. Pg. 249-50) Had the prosecutor made such statements, a mistrial would have been warranted, in light of Mr. Mannepuli's assertion of his right not to testify.

2. Conviction also "resulted from . . . [t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9542(a)(2).

    a. The new evidence consists of a letter from Ms. D██ ivil attorney dated November 7, 2013, demanding a settlement of $1,500,000. This evidence was not discoverable at trial as it did not yet exist, but is the first time a dollar figure is placed on Ms. D██'s civil suit.

Petitioner's PCRA Petition, 11/3/14, at 3-4.

This Court held an evidentiary hearing on the Petitioner's PCRA Petition on February 6, 2015. After reviewing the entire record in this case and considering the arguments and evidence presented by the Petitioner at the PCRA hearings, this Court finds that the Petitioner is not entitled to relief under the PCRA.

## DISCUSSION

### I. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the defendant bears the burden of establishing each of the following: 1) his underlying claim is of arguable merit; 2) the course of conduct pursued by counsel did not have a reasonable basis designed to effectuate the defendant's interests; and, 3) counsel's actions prejudiced the defendant, in that, but for counsel's actions the outcome of the proceeding would have been different. *Commonwealth v. Meadows*, 787 A.2d 313 (Pa. 2001); *Commonwealth v. Ervin*, 766

3

A.2d 859, 862 (Pa. Super. 2001). Thus, counsel's assistance is deemed constitutionally effective if the particular course chosen by counsel had some reasonable basis designed to effectuate the client's interest.

### i. Prompt Complaint Instruction

The Petitioner's first claim is that Trial Counsel was ineffective for failing to request the Prompt Complaint jury instruction, despite the victim's five (5) day delay in making the allegation, warranting the instruction.

"The premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred." *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006). The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim." *Id.* This is especially true where the perpetrator is one with authority or custodial control over the victim. *Commonwealth v. Ables*, 590 A.2d 334, 340 (Pa. Super. 1991), *appeal denied*, 597 A.2d 1150 (Pa. 1991).

The incident in this matter took place on October 13, 2012. At trial, the victim was asked about when she reported the incident:

| COMMONWEALTH: | Did you immediately tell anyone that this had happened, right then that day? |
|---|---|
| R▮▮▮▮ D▮▮: | No. |
| COMMONWEALTH: | Why not? |
| R▮▮▮ D▮▮: | I knew if I would have told, I would have got in trouble. |
| COMMONWEALTH: | With who? |

4

R____ D____: His father or his uncle.

COMMONWEALTH: And who were they to you?

R____ D____: My bosses.

COMMONWEALTH: And how are they your bosses?

R____ D____: They own the place; the whole area; all the buildings.

COMMONWEALTH: Okay. How did you feel about the fact that this had happened to you?

R____ D____: Horrible.

COMMONWEALTH: How so?

R____ D____: Every night I have horrible nightmares, and I wake up – I just can't breathe. I'm scared I might hurt myself.

COMMONWEALTH: Did this start right away or did this develop over time.

R____ D____: I just kept getting worse.

COMMONWEALTH: Okay. Did you eventually report this to anyone at work?

R____ D____: I eventually reported it to Deborah.

COMMONWEALTH: Who is Deborah?

R____ D____: She was right under Dinesh as manager.

COMMONWEALTH: Was she your supervisor?

R____ D____: She was basically my boss.

COMMONWEALTH: Do you remember when you told her about it?

R____ D____: It might have been the day afterward, after , or a few days approximately after.

5

| | |
|---|---|
| COMMONWEALTH: | Okay. And did you tell anyone else? |
| R██████ D██: | I told the other manager Luis the day after. |
| COMMOWNEALTH: | Did you tell him personally or did you tell him on the phone? |
| R██████ D██: | I told him over the phone. Luis. |
| COMMONWEALTH: | And what made you decide to tell him? |
| R██████ D██: | For extra support when I would confront the big bosses. |

Notes of Testimony [hereinafter "N.T."], 9/26/13, at 76-78.

On October 18, 2013, the victim met with Deborah Diaz, Luis Alicea, and Petitioners' father and Uncle to report the incident that took place on October 13, 2012. N.T. at 78-79. The victim testified at trial that Petitioner's family told her not to go to the police and that "they would handle it within their family." N.T. at 80. The victim testified that she reported the incident to the police on October 18, 2012. N.T. at 80. Prior allegations of inappropriate behavior on behalf of Appellant did surface in the victims' report to police on October 18, 2012. N.T. at 79; *see* Defense Ex. No. 9, at 2. The victim alleged that the Appellant had made sexual advances towards her in August and September of 2012. N.T. at 81-84; Defense Ex. No. 9, at 2. At trial, it was confirmed that these incidents remained unreported until October 18, 2012. N.T. at 79, 99. When the victim was asked why she didn't quit her job or try to find another job after the incidents, the victim stated that she was scared to tell anyone about the incidents and did not have internet to look for another job and had bills to pay. N.T. at 84, 99. The victim further testified that on September 17, 2012, she specifically requested to only work for Appellant and Luis at the Arby's. N.T. at 100-101.

Luis Alicea, the general manager at the Arby's in Sinking Spring, testified that he received a phone call from the victim on October 15, 2012. N.T. at 139. During this phone call the victim told Alicea that Petitioner had forced himself on her in the Beer Mart storage shed. N.T. at 139-40. Deborah Diaz, the assistant general manager of the Arby's in Sinking Spring, testified that she noticed a change in the victim's working attitude. N.T. at 153-54. Diaz pulled the victim aside at work and asked to speak with her about her change in attitude. N.T. at 154. The victim went on to explain the incident that took place in the Beer Mart shed where Petitioner forced himself onto her. N.T. at 154. Diaz confirmed that this conversation took place within a week of the October 18, 2012 meeting.

At the PCRA hearing Trial Counsel was asked why he did not request the prompt complaint instruction to be ready to the jury.

| TRIAL COUNSEL: | It was not a long period of time in between the alleged incident that was the subject of this particular case and eventually going to the police. I believe it was two days. And again, arguably, in terms of our theory of why this young lady was making the allegation, the motive, the credibility for that, and I believe that she had even testified at trial as to the reasons why she did not notify anyone right away. |
| --- | --- |
| | I believe it was her testimony on cross-examination that she internalized this situation, and then finally after a day or two, that's when she mentioned something, I believe, to her family and then they went to – then they went to, I believe, management and then to the police or to the police and then management. That also was an issue of cross-examination of her, who she actually reported it to first. |

Notes of Testimony [hereinafter "N.T"], 2/6/15, at 20-21.

When asked about his strategic basis for not requesting the instruction concerning the first two sexual incidents in August and September, Trial Counsel stated the following:

TRIAL COUNSEL: Number one, it was not a rape. This was a touching of her breast. And again, based upon the answers that she had given, her explanation for that, and the basis for our theory of why she was making this allegation, I believe that established reasons why that her credibility was not to be believed.

. . . .

TRIAL COUNSEL: Once again, I had argued to the jury that it was to me inconceivable that a young lady, with all due respect, working a minimum wage job at a fast food restaurant with these things taking place, would not have quit, left, gone somewhere else, and then furthermore, you know asked to speak – or asked to work under Mr. Mannepuli if those two first things had occurred. So more so I believe it was argued that her credibility fails whether or not I ask for a prompt complaint about those first two or not.

Prompt reporting to public authority is not required in prosecution of a sexual offense. 18 Pa. C.S.§ 3105. If a complaint is delayed substantially without any reasonable explanation, an inference can be drawn regarding the credibility of that complaint and against whether the incident in fact occurred. *Commonwealth v. Snoke,* 580 A.2d 295, 297 (Pa. 1990). Questions of credibility must always be put before the jury as the fact finder and the judge must instruct the jury as to credibility considerations applicable to the case. *Commonwealth v. Smith,* 467 A.2d 1120 (Pa. 1983); *Commonwealth v. Holmes,* 486 Pa. 415, 406 A.2d 510 (1979); *Commonwealth v. Hampton,* 341 A.2d 101 (Pa. 1975); *Commonwealth v. Murray,* 334 A.2d 255 (Pa. 1975).

Although Appellant claims the incident was not reported until five (5) days after the incident, the trial record belies this statement. In this matter, it is clear that the victim

8

reported the incident to her supervising manager, Luis Alicea, on October 15, 2015, two days after the incident. Although Deborah Diaz did not provide an exact date of her conversation with the victim concerning the sexual assault, it is apparent that the conversation happened prior to the October 18, 2012 meeting with Arby's management as well. At trial, Trial Counsel cross-examined the victim concerning her failure to report the first two incidents and the fact that she requested to work directly under Appellant after the August incident occurred. Trial Counsel focused on the fact that the victim did not quit her job nor did she search for a job after the incidents in August and September of 2012. The victim's reasons for failing to report prior to October 15, 2012 also were explained through her testimony at trial. Additionally, the trial judge did instruct the jury thoroughly upon the general subject of credibility in accordance with the suggested instruction for witness credibility, PA Suggested Standard Jury Instructions (Crim.) § 4.17.

Although the complaint in this matter was delayed, a reasonable explanation for the delay was provided by the victim. Additionally, the delay in reporting was not so substantial as to require a prompt complaint instruction. The testimony provided by the victim properly allowed the jury to draw an appropriate inference regarding her credibility of that complaint and against whether the incident in fact occurred. Trial Counsel reasonably questioned the victim about her failure to report the three incidents thereby proving the course of conduct pursued by Trial Counsel did have a reasonable basis designed to effectuate the Appellants interests. Trial Counsel's failure to request the prompt complaint jury instruction was also not essential considering the § 4.17 instruction given by the trial judge provided the jury with the factors that are properly

9

considered in ascertaining the credibility of the victim's testimony. After reviewing the entire record in this case and considering the arguments and evidence presented, Trial Counsel had a reasonable basis for not requesting the prompt complaint instruction, and the lack of this instruction would not have changed the outcome of trial. Therefore, this claim is meritless.

### ii. Failure to Call Known, Present Witness

The Petitioner's next claim is that Trial Counsel was ineffective for failing to call a Megan Witters, a known witness who was under subpoena and present during the first day of trial.

When a defendant claims counsel was ineffective based upon Trial Counsel's failure to call a witness, he is entitled to relief only if he proves all of the following: (a) the witnesses existed, (b) the witnesses were available, (c) counsel was informed of or should have known of the witnesses, (d) the witnesses were willing to cooperate and testify for the defendant at trial, and (e) how the absence of the witnesses' testimony prejudiced the defendant, in that it denied him a fair trial. *Commonwealth v. Miller*, 868 A.2d 578, 581-582 (Pa. Super. 2005). Furthermore, a claim based on counsel's failure to call a potential witness involves trial strategy. *Commonwealth v. Auer*, 681 A.2d 1085 (Pa. 1996). Where trial strategy is implicated, counsel is deemed effective so long as the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests, even if other alternatives were more reasonable. *Commonwealth v. Gillespie*, 620 A.2d 1143, 1145 (Pa. Super.1993) (emphasis added). Thus, it is well settled that a failure to call a witness whose testimony may be helpful to the defendant does not constitute ineffective assistance if counsel had a reasonable basis for declining to call the

10

witness. *Commonwealth Pittman*, 441 A.2d 436, 438 (1982 Pa. Super.). Stated another way, the balance tips in favor of finding effective assistance as soon as it is determined that Trial Counsel's actions had any reasonable basis. *Hull*, 982 A.2d at 1023.

After reviewing the record, including the evidence presented at the PCRA hearing, Trial Counsel in the present case was not ineffective for failing to call Megan Witters on the Petitioner's behalf. Although Witters' testimony may have been helpful to Petitioner, it is clear counsel had a reasonable basis for declining to call her as a witness.

At the PCRA hearing, Ms. Witters testified that she worked at the Supercuts neighboring the Beer Mart's[4] storage shed where the indecent assault took place. Ms. Witters confirmed that she provided two statements concerning the incident, one to Arby's management and one to police. While working at the Supercuts, a manager of the neighboring Arby's asked Ms. Witters to come to the Arby's to provide a written statement of what she witnessed outside the shed on October 13, 2012. Ms. Witters was also told that she would be paid for her time taken to write the statement. Ms. Witters testified that when she arrived at Arby's, she was given a previously formulated statement, which she then refused to sign. Ms. Witters turned over the formulated statement and drafted her own written statement on the back of the paper, which she then signed. She testified at the PCRA Hearing that she told both the police and Trial Counsel about the formulated statement and offer of payment extended to her by Arby's management.

---

[4] The victim was an employee at 422 Beer Mart, a beer distributor business in South Heidelberg Township, Berks County and an employee at the Arby's Restaurant in South Heidelberg Township, Berks County. The Defendant was the victim's manager at the Beer Mart and Arby's Restaurant. Testimony indicated both businesses are owned by Defendant's family.

11

At the PCRA Hearing, Trial Counsel confirmed that Witters was under subpoena with the belief that she might be called to testify at Petitioner's trial. Trial Counsel confirmed that the basis of her testimony pertained to the moment in time when Petitioner and the victim left the storage shed on October 13, 2012. Witters' testimony was to focus on the fact that she did not notice anything unusual as the victim and Petitioner came out of the shed on that date. Trial Counsel explained that at trial, the victim confirmed she did not come out of the storage shed distraught or upset. Based on the victim's testimony, Trial Counsel believed it was better not to call Witters to testify on Petitioner's behalf. At the PCRA Hearing, Trial Counsel stated that he did not want the issue of the formulated statement and offer of payment to negatively impact the jurors' perspective of Petitioner and his family. Trial Counsel believed as part of his trial strategy, it was better not to call Witters to testify, especially since evidence of the formulated statement and offered payment were included in part of the police interview report with Witters.

Based on Witters' testimony at the PCRA Hearing, it is apparent that Trial Counsel had a reasonable basis for not calling her to testify. Trial Counsel was able to avoid potential issues by deciding not to call her. The fact that Arby's management offered Witters payment to sign a formulated statement could have been viewed as inappropriate by the jury. Additionally, the victim testified at trial that she did not leave the storage shed distraught or upset. Witters would have merely been reiterating the emotions already admitted to by the victim if she had been called to testify. Once the victim testified, the usefulness of Witters' testimony was outweighed by the potential damaging impact her testimony could have had on Petitioner. After reviewing the entire record in this case and considering the arguments and evidence presented, Trial Counsel had a reasonable basis

12

not to call Witters, thereby making this claim meritless.

### iii. Failure to Object to Prior Bad Acts Evidence

Petitioner further claims that he was prejudiced by Trial Counsel's failure to object to admission of the testimony regarding two (2) prior allegations of inappropriate behavior, for which Petitioner was not charged criminally.

At the PCRA hearing, Trial Counsel testified that he was aware that the Commonwealth intended to introduce evidence of the two prior allegations of inappropriate behavior by Petitioner. Based upon Trial Counsel's trial strategy, he allowed for the evidence to be admitted in order to attack the victim's credibility. Trial Counsel explained at the PCRA Hearing that trial testimony was provided showing the victim went directly to management after the two allegations and threatened to quit her job unless she was able to work directly under Petitioner. Trial Counsel then used this information at trial to show that the victim lacked credibility in her testimony concerning the assault that took place on October 12, 2013. Trial Counsel believed that the allegations were in fact helpful to his case rather than harmful, which is why he did not object to the introduction of the prior bad acts evidence. By showing the jury that the victim specifically requested to work with Petitioner after allegedly being inappropriately touched by him, Trial Counsel believed the jury would find victim's testimony to be untrustworthy.

After reviewing the entirety of the evidence against the Petitioner presented at trial, this Court finds that there is not a reasonable probability that references to or any other statements about the Petitioner's prior bad acts adversely affected the outcome of the Petitioner's trial. Furthermore, Trial Counsel had a reasonable basis for allowing

13

such evidence to be admitted. The Petitioner was not prejudiced by Trial Counsel's failure to object to the admission of prior bad acts testimony.

### iv. Improper Comment on Assertion of Right to Silence by Trial Counsel in Closing Argument

Petitioner claims that Trial Counsel made remarks in his closing argument that were improper and ineffective. Petitioner believes the remarks made by Trial Counsel left the jury with an impression that Petitioner's silence could be used against him in deliberations. In Trial Counsel's closing argument, he stated "we are here today because Mr. Mannepuli has said I'm not guilty" Notes of Testimony [hereinafter "N.T."], 9/26/13, at 243. "There is no way for Defendant to prove to you that it didn't happen other than to be here and say I didn't do it. I'm not guilty." *Id.* at 249-250.

When Trial Counsel was asked about these comments at the PCRA Hearing he explained his reasoning for making such statements. Trial Counsel stated that he wanted to reiterate to the jury the law that they were sworn to follow the law and that it was not the Petitioner's responsibility to take the stand and testify that he did not commit the crime. Trial Counsel wanted to remind the jury that the Petitioner did not carry the burden of proof nor was it his responsibility to prove his innocence. Trial Counsel further confirmed that in no way was it his intention to point out Petitioner's silence.

This Court rejects the contention made by Petitioner that Trial Counsel's statements improperly influenced the jury. Trial Counsel in no way misled the jury concerning Petitioner's right no to testify nor did his statements lessen the Commonwealth's burden of proof. Any prejudice resulting from Trial Counsel's statements, which were at most "*de minimus*," were obviated by the "Defendant's Failure to Testify" instruction given by the trial court:

14

> [T]he defendant chose not to testify in this case and it is entirely up to the defendant in any criminal trial whether or not to testify. The defendant has an absolute right founded on the Constitution to remain silent, and you must not draw any inference of guilt or any other inference which is adverse to the defendant from the fact that the defendant did not testify.

N.T., 9/27/13, at 237; *see* Pa. SSJI (Crim), §3.10A (2006).

A jury is presumed to follow the trial court's instructions. *Commonwealth v. Travaglia*, 28 A.3d 868, 882 (Pa. 2011). The Petitioner failed to provide any evidence at the PCRA Hearing that the jury failed to follow the trial court's instructions in this case. Furthermore, Trial Counsel explained at the PCRA Hearing that he made the statements so the jury would recognize that the burden of proof did not sit with Petitioner. Therefore, Trial Counsel had a reasonable basis for making these statements which were designed to effectuate the client's interest. As a result, Petitioner has failed to establish Trial Counsel's ineffectiveness concerning these statements.

## II. Newly Discovered Evidence

Petitioner's final claim is that newly discovered evidence, unavailable at the time of trial, has subsequently become available and would have changed the outcome of trial if it had been introduced. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi). Petitioner points specifically to a demand letter dated November 7, 2014, which was sent by the victim's civil attorney demanding a settlement of $1,500,000 for sexual harassment and emotional distress. Petitioner believes that had the demand letter been available and introduced at the time of trial, it would have changed the outcome of the trial by doing more than impeaching the victim's credibility.

To obtain relief based upon newly-discovered evidence under the PCRA, a petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence

15

is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *See Commonwealth v. Abu-Jamal*, 720 A.2d 79, 94 (Pa. 1998); *Commonwealth v. Williams*, 732 A.2d 1167, 1180 (Pa. 1999).

To qualify as exculpatory evidence, the newly discovered evidence must tend "to establish defendant's innocence of the crimes charged, as differentiated from that which, although favorable, is merely collateral or impeaching." *Commonwealth v. Redmond*, 577 A.2d 547, 552 (Pa. Super. 1990); *Commonwealth v. Shuck,* 164 A.2d 13, 17 (Pa. 1960), cert. denied, 368 U.S. 884 (1961) ("evidence . . . must not be cumulative or merely impeach credibility").

At trial, Trial Counsel asked the victim what she expected to get out of hiring a lawyer to handle her pending civil actions. N.T., 9/26/13, at 103-04, 109-11. Trial Counsel asked the victim how much money she expected to obtain from her civil claims. *Id.* at 110-11. The victim responded by stating that she would rather see Petitioner punished and that she did not care about recovering any money as a result of her civil claims. *Id.* at 111. The victim confirmed the her reason for hiring an attorney was because she knew that Petitioner's family, the owners of the Beer Mart, would try to accuse her of lying about the assault. *Id.* at 85. The victim stated that she believed an attorney would help punish the man who hurt her and caused her family to suffer. *Id.* at 86. When the victim was asked if she had received any monetary reward as a result of the assault, the victim replied that she had only received unemployment benefits. N.T., 9/26/13, at 87. The victim went on to explain that she believed that by hiring an attorney, she would be able to regain her freedom that she had lost since the assault. *Id.* at 86-87. The victim testified that she was seeing a therapist as a result of the assault due to severe depression

16

and fear of having a male boss in the workplace. *Id.* The victim did testify that she had not withdrawn her pending civil actions filed against Petitioner at the time of the criminal trial. *Id.*

Petitioner contended in his appeal to the Superior Court that the trial court erred in denying his post-sentence motion because the verdict was against the weight of the evidence in light of the admission of the civil demand letter seeking $1.5 million dollars from Petitioner's employers. *See* Concise Statement of Errors Complained of on Appeal, 1/16/14. The Superior Court stated the following in its denial of Petitioner's appeal:

> With respect to the settlement demand, the trial court writes as follows:
>
>> this is simply not a case where proof of pending civil actions are so clearly of greater weight than the facts resulting in the adjudication that to ignore them or to give them equal weight with all the facts would be to deny Appellant justice. The fact that Ms. D█████as taken civil action against Appellant was established by Defense counsel at trial. Furthermore, the jury was aware of such pending claims against Appellant before determining a verdict. Trial Court Opinion, 2/6/14, at 3.
>
> We agree with the trial court. **The demand letter simply has no bearing on the case.**

Superior Court Memorandum, 9/24/14, at 4 (emphasis added).

This Court finds evidence of a $1.5 million demand letter would have merely acted as an extra tool to impeach the credibility of the victim, which is not exculpatory for purposes of §9543(a)(2)(vi). Newly discovered evidence must tend to establish defendant's innocence of the crimes charged. Evidence of the value included in the demand letter may have shown the victim's underlying reasoning for filing the civil claim letter to be less credible, but the value demanded in the letter would not have been likely to compel a different verdict from the jury. The numeric value included in the demand letter is nothing but collateral evidence at this point, bearing in mind the jury was notified

17

of the civil claim pending against Petitioner prior to determining a verdict. The added evidence of the *actual value* requested by the victim in the demand letter is not enough at this point to entitle the Petitioner to a new trial. Therefore, this claim is meritless.