J-S56015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARAK WILLIAMS | |
| Appellant | No. 2266 MDA 2013 |

Appeal from the Judgment of Sentence February 1, 2011
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0001479-2009

BEFORE:  PANELLA, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                **FILED OCTOBER 31, 2014**

Appellant, Darak Williams, beat a three-year-old child to death.  He appeals *nunc pro tunc* from the judgment of sentence for first-degree murder entered February 1, 2011, by the Honorable Michael J. Barrasse, Court of Common Pleas of Lackawanna County.  We affirm.

On February 21, 2008, three-year-old K.S. (the "victim"), who appeared lifeless, and whose body exhibited signs of severe trauma, was taken to Community Medical Center by Williams and the victim's mother, co-defendant Kashema Reddish.  The victim was pronounced dead shortly after her arrival.  A subsequent autopsy attributed the cause of death to "multiple traumatic injuries," specifically to the back of the head.  After initially

_____

[*] Retired Senior Judge assigned to the Superior Court.

speaking with police, Williams and Reddish fled Lackawanna County, leaving Reddish's son in the custody of Children and Youth Services. Williams and Reddish were later apprehended in Buffalo, New York, on March 8, 2009.

Subsequent to his arrest, Williams was charged with Murder in the First Degree,[1] Murder in the Third Degree,[2] and Endangering the Welfare of a Child.[3] The third-degree murder charge was withdrawn prior to trial. Following a bench trial, on February 1, 2011, Williams was convicted of first-degree murder and endangering the welfare of a child and sentenced to life imprisonment. On April 28, 2011, Williams filed an untimely Post Sentence Motion for Judgment of Acquittal, which the trial court denied following a hearing. With the aid of newly appointed counsel, this *nunc pro tunc* appeal followed.

Preliminarily, we note that Williams has waived the challenges to the weight of the evidence he raises in issues two through five. "[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." ***Commonwealth v. Thomson***, 93 A.3d 478, 490 (Pa. Super. 2014) (citing Pa.R.Crim.P. 607). Failure to do so will result in waiver of the claim on appeal. ***See id***.

_____

[1] 18 Pa.C.S.A. § 2502(a).
[2] 18 Pa.C.S.A. § 2502(c).
[3] 18 Pa.C.S.A. § 4304.

Williams failed to raise a challenge to the weight of the evidence to support his convictions either prior to sentencing or in his untimely post-sentence motion filed April 28, 2011.[4]  Therefore, we are precluded from reviewing these claims on appeal.

The remaining issues Williams raises for our review are as follows:

1. Whether there was sufficient evidence to convict [Williams] since the Commonwealth was unable to establish that [Williams] had exclusive custody of the victim at the time the fatal injuries were inflicted thereby making him responsible for the killing and/or showing he had the specific intent to kill or acted with requisite malice needed for conviction of First Degree Murder and/or Third Degree Murder?

* * *

6. Whether the trial court committed an error of law and/or an abuse of discretion in refusing [Williams's] request for new, private counsel made prior to trial after expressing his lack of confidence in current counsel?

_____

[4] Williams's untimely post-sentence motion requesting a judgment of acquittal raised a challenge to the sufficiency of the evidence to support his first-degree murder conviction.  At the hearing held on the motion, the Commonwealth argued that the motion sounded more as a challenge to the weight of the evidence, rather than to the sufficiency of the evidence.  **See** N.T., Hearing, 6/3/11 at 5-6.  Although the Commonwealth noted that it did not object to arguing a challenge to the weight of the evidence, Williams did not alter his claim to include a weight of the evidence challenge either at the hearing or at any time thereafter.  The trial court summarily dismissed the motion at the conclusion of the hearing.  **See id**. at 11.  We do not find the Commonwealth's characterization of Williams's argument sufficient to preserve these claims on Williams's behalf.  At any rate, even if Williams had raised a challenge to the weight of the evidence, the untimely nature of his post-sentence motion would still have rendered those claims waived.

7. Whether the trial court committed an error of law and/or abuse of discretion in failing to issue a *sua sponte* declaration of mistrial on the false testimony provided by a key witness of the prosecution which ultimately had a substantial impact on the verdict?

8. Whether the trial judge committed an abuse of discretion in failing to [*sua sponte*] recuse himself from the non-jury trial even though he presided over all pre-trial motions of both [Williams] and his Co-Defendant, and accepted the guilty plea from Co-Defendant who ultimately testified against [Williams] at his non-jury trial?

Appellant's Brief at 5-6.

Williams first argues that the evidence was insufficient to support his conviction for murder in the first degree.[5] We review a challenge to the sufficiency of the evidence as follows.

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the

_____

[5] The charge of murder in the third degree was dropped prior to trial. Therefore, we limit our discussion to the sufficiency of the evidence as it relates to murder in the first degree.

evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

***Commonwealth v. Slocum***, 86 A.3d 272, 275-276 (Pa. Super. 2014) (citation omitted).

"To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and that the defendant acted with malice and a specific intent to kill." ***Commonwealth v. Burno***, 94 A.3d 956, 969 (Pa., 2014) (citation omitted). "The Commonwealth may use wholly circumstantial evidence to discharge its burden of showing the accused intentionally killed the victim … and circumstantial evidence can itself be sufficient to prove any or every element of the crime…." ***Commonwealth v. Perez***, 93 A.3d 829, 841 (Pa. 2014).

Williams first argues that the Commonwealth failed to establish that he perpetrated the killing. ***See*** Appellant's Brief at 19. In order to prove that Williams was responsible for the victim's death, the Commonwealth relied on the principle that where an adult has sole custody of a child for a period of time, and, during that time the child suffers wounds which unquestionably are neither self-inflicted nor accidental, the evidence is sufficient to allow a

jury to infer that the adult inflicted the injuries. *See Commonwealth v. Paquette*, 301 A.2d 837, 840 (Pa. 1973).

At trial, forensic pathologist Dr. Wayne Ross testified that the traumatic injury which caused the victim's death likely occurred within two to three hours of the time when the victim arrived at the hospital at 4:07 p.m. *See* N.T., Non-Jury Trial, 1/27/11 at 56-57. It is undisputed that at this point Williams had exclusive custody of the victim. However, Williams relies upon testimony regarding the victim's body temperature when she arrived at the hospital to extrapolate that the injury could have occurred as early as 7:00 a.m., when the victim's mother was still at home and Williams therefore did not have exclusive custody of the victim. This argument is unavailing. We reiterate that the Commonwealth need not preclude every possibility of innocence. *See Slocum*.

The trial court clearly resolved any conflicting evidence regarding the time period in which the fatal injury occurred in favor of the Commonwealth. Based upon Dr. Ross's testimony, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find sufficient evidence existed that that the injury occurred when the victim was in Williams's exclusive custody such that the court could properly infer that Williams inflicted the injuries. *See Paquette*.

Williams's argument that the evidence failed to show that he possessed the requisite specific intent to kill the victim is similarly without merit. "Specific intent to kill can be proven where the defendant knowingly

applies deadly force to the person of another." ***Commonwealth v. Stokes***, 78 A.3d 644, 650 (Pa. Super. 2013) (citation omitted). "The Commonwealth can prove this specific intent to kill from circumstantial evidence." ***Commonwealth v. Tharp***, 830 A.2d 519, 523-524 (Pa. 2003) (citation omitted). The trial court stated its reasons for finding Williams guilty of first-degree murder as follows:

> First, the forensic pathologist as well as the emergency room physician testimony is clear and unequivocal that the injuries that were inflicted upon [the victim], specifically, the diffuse axonal injury in the pons area of the brain, was so severe that she could not live beyond hours after the injury was inflicted. There is not a scintilla of medical evidence to the contrary that these injuries could have occurred earlier.
>
> The record is equally clear and without conflict that [Williams] had exclusive custody of [the victim] during the time period in which the doctor's [sic] testified that the fatal injuries occurred.
>
> [Williams] has repeatedly indicated that he assumed parental guardian responsibility with regard to the victim that day.
>
> The question then in regard to first degree murder, the [c]ourt finds that the evidence was sufficient to show that [Williams's] actions manifested a specific intent to kill given the brutality of the assault. A specific intent to kill is the state of mind which is a killing which is willful, deliberate and premeditated. Specific intent may be proven where the defendant knowingly applies deadly force to another person.
>
> *            *            *
>
> If the deadly force is knowingly applied by the actor to the person of another, the intent to take a life is as evidence [as] if the actor stated the intent to kill at the time the force was applied.
>
> In addition, it's based upon the number, type and severity of the victim's injuries. In fact, I find sufficient evidence to find beyond a reasonable doubt that the defendant killed with malice.

- 7 -

> The attack upon the brutal – the brutal assault upon the vital organs and the injuries that were the proximate cause of her death are clear by the testimony through the physicians and the experts. As importantly, the extensive physical injuries [Williams] inflicted upon the child, his cold hearted failure to timely seek medical assistance and the contrary explanations that he offered as to how the child sustained her injuries were sufficient to support the inference that [Williams] killed the victim intentionally, deliberately, and with premeditation.

N.T., Non-jury Trial, 2/1/2011 at 2-5. The record supports the trial court's analysis.

Dr. Ross testified that in addition to numerous healing bone fractures and existing injuries, he observed over 50 different areas of fresh injury to the child's body, including fresh hemorrhages or bruises to the chest, back, buttocks, lower legs, face, lips, and jaw, consistent with repeated blunt force trauma. *See* N.T., Non-jury Trial, 1/27/11 at 12-19. Dr. Ross additionally testified the victim exhibited fresh abrasions and bruising to her neck, and that the mechanism of injury would be consistent with strangulation. *See id*. at 20-21. All of these injuries occurred within less than 24 hours. *See id*. at 12-21. Most significantly, Dr. Ross testified that the victim had suffered a fatal brain injury consistent with the application of extreme force somewhere around 12:30 to 1:30 p.m., when she was in Williams's exclusive custody, and that the victim would never have regained consciousness after this injury. *See id*. at 51-57.

Based upon the litany of traumatic injury inflicted upon vital parts of the child victim's body – and the traumatic head injury inflicted by Williams

in particular – we do not hesitate to find the evidence sufficient to suggest a specific intent to kill.

Williams argues in his sixth issue raised on appeal that the trial court violated his constitutional right to counsel when it denied his request for a continuance to retain new private counsel. The decision to grant or deny a request for a continuance is within the sound discretion of the trial court. *See Commonwealth v. Prysock*, 872 A.2d 539, 541 (Pa. Super. 2009). A court's decision to deny a request for a continuance

> will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record....

*Id*. (internal citations and quotation marks omitted).

Although the constitutional right to counsel guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution "entitle an accused to choose at his own cost and expense any lawyer he may desire," this right is not absolute. *Id*. at 542 (citation omitted).

> Rather, the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.

*Id*. (internal quotes and citations omitted).

On January 24, 2011, at the start of the second day of the bench trial, the trial court indicated it had received a *pro se* letter from Williams stating that he had paid for and retained new private counsel, and that he no longer wished to proceed with his current private counsel, Carlos Martir, Esquire. *See* N.T., Non-Jury Trial, 1/24/11 at 3. When colloquyed by the trial court, Williams was unable to state with any specificity in what manner he deemed counsel's representation to have been deficient. Attorney Martir testified that he was willing and able to proceed with the trial without a continuance. *See id*. at 6-8. Further, Paul Walker, Esquire, the new private counsel Williams purportedly retained, testified that he had never met with Williams and had not been paid by Williams or a member of his family. *See id*. at 9. Attorney Walker testified that he had received a phone call indicating Williams's interest in hiring his services but had not heard any more thereafter. *See id*. Attorney Walker further stated that he had not reviewed any evidence or discovery in the case, had not met with Williams or his family, and had no connection to the case. *See id*. at 10.

In denying Williams's request for a continuance to retain new private counsel, the trial court noted that it had previously permitted Williams's appointed counsel to withdraw so that Williams could retain Attorney Martir. *See id*. at 15. The court further noted that Williams had never previously indicated any objection to Attorney Martir's representation, that Attorney Martir was qualified and prepared to represent Williams at trial, and that the

court found Williams's request to be a bad faith dilatory tactic. ***See id***. at 16.

We find no abuse of discretion. The "right to counsel does not give [a defendant] the right to delay the trial indefinitely because he is dissatisfied with competent counsel … ready and willing to represent him." ***Commonwealth v. Ingram***, 591 A.2d 734, 738 (Pa. Super. 1991) (citation and internal quotation marks omitted). Given the wide latitude the trial court had already given Williams regarding his retention of qualified private counsel, and Williams's failure to provide any substantial reason why his current counsel was deficient, we cannot find that the trial court abused its discretion in denying Williams a continuance in order to employ new private counsel.

Williams next argues that the trial court erred by failing to *sua sponte* declare a mistrial based upon the allegedly false testimony of the victim's mother at trial. ***See*** Appellant's Brief at 44. Pennsylvania Rule of Criminal Procedure 605 provides that a trial court may declare a mistrial only for reasons of "manifest necessity." Pa.R.Crim.P. 605(B).

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event

may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

**Commonwealth v. Culver**, 51 A.3d 866, 871 (Pa. Super. 2012) (citation omitted).

At trial, the victim's mother denied that the victim exhibited any injuries prior to the traumatic injury that caused the child's death. Williams contends that this testimony was directly rebutted by Dr. Ross's testimony that the victim's body exhibited a history of chronic or healing injuries that precipitated the traumatic injury inflicted on February 21, 2008. **See** Appellant's Brief at 47. Williams maintains that the Commonwealth's failure to bring to light the alleged false testimony of its own witness amounts to prosecutorial misconduct such that a new trial is necessary. **See id**. at 48.

Williams's claim is a thinly veiled attack on a witness's credibility, the determination of which "is within the sole province of the trier of fact who is free to believe all, part or none of the evidence." **Commonwealth v. Tielsch**, 934 A.2d 81, 94 (Pa. Super. 2007) (citation omitted). It is unwarranted and impractical to insist that a trial court declare a mistrial whenever confronted with conflicting testimony. To do so would bring the

judicial process to an utter standstill. Simply put, we cannot find that the mere existence of conflicting testimony in a criminal case constitutes manifest necessity such that a new trial is warranted. Therefore, the trial court did not abuse its discretion in failing to *sua sponte* declare a mistrial.

Lastly, Williams argues that Judge Barrasse abused his discretion in failing to *sua sponte* recuse himself from the non-jury trial, after he accepted co-defendant Kashema Reddish's guilty plea to involuntary manslaughter. **See** Appellant's Brief at 49. "As a general rule, a motion for recusal must initially be directed to and decided by the jurist whose impartiality is being challenged." **Tharp**, 830 A.2d at 534 (citation omitted). "Once a trial is complete with entry of a verdict or judgment, a party is deemed to have waived his right to have a judge disqualified unless he can meet the standard regarding after-acquired evidence, *i.e.* the evidence could not have been brought to the attention of the trial court in the exercise of due diligence and the existence of the evidence would have compelled a different result in the case." **Id**. (citation omitted).

Here, Williams admittedly did not raise a recusal motion in the court below. Moreover, he does not claim that his knowledge of the trial court's participation in the co-defendant's guilty plea proceedings constitutes after-acquired evidence that would have compelled a different result in the case. Accordingly, we are constrained to find that Williams has waived his right to seek the trial court's recusal. **See Tharp**, **supra**.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/31/2014</u>