J-S42020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
QUADIM BASS :
:
Appellant : No. 2344 EDA 2019

Appeal from Judgment of Sentence Entered March 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009385-2017

BEFORE: PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.: Filed: October 29, 2020

Appellant, Quadim Bass, appeals from the judgment of sentence entered

on March 15, 2019[1] following his jury trial convictions for third-degree murder

and endangering the welfare of a child.[2] We affirm.

The trial court summarized the facts of this case as follows:

> On July 14, 2017, at approximately 1:15 pm., Police Officers
> Nikolas Shannon and Timothy Sedler responded to a radio call of
> a person screaming at [a residence on] North 57th Street,
> Philadelphia[, Pennsylvania]. When police arrived, they
> encountered [Appellant] who identified himself as the father of the
> victim, a two[-]year[-]old child. [Appellant] directed police to a
> second floor apartment where they observed the victim laying
> [*sic*] on the bedroom floor, naked and unconscious. [Appellant]
> told police officers that the victim had fallen down the stairs.

---

[1] The judgment of sentence in this case was made final by the denial of
post-sentence motions on July 12, 2019.

[2] 18 Pa.C.S.A. §§ 2502(c) and 4304, respectively.

[Appellant] also told police that he and the victim were the only persons in their residence at the time of the emergency.

First, the police officers, and upon their arrival, the EMT personnel, performed Cardio Pulmonary Resuscitation (CPR) on the unconscious victim. During their efforts to resuscitate the victim, both officers observed that [Appellant] vacillated back and forth between extreme distresses with loud outbursts to a perfectly calm demeanor. After the first responders failed to resuscitate the victim, the child was transported to Children's Hospital of Philadelphia (CHOP), where he was pronounced dead at approximately 2:16 [p.]m. The mother of the victim arrived at the hospital after the child was pronounced dead, and was observed arguing with and physically striking [Appellant]. On July 15, 2017, a post mortem examination was performed and the medical examiner ruled the cause of death to be blunt force trauma, and the manner of death to be homicide. At trial, Dr. Sam Gulino, Chief Medical Examiner, testified for the Commonwealth and offered the above opinions to a reasonable degree of medical certainty.

In contrast to [Appellant's] statement that the child was injured in a fall, Dr. Gulino opined that the injuries to the victim were not consistent with falling down stairs, nor were they consistent with medical interventions such as CPR. Instead, Dr. Gulino concluded with a reasonable degree of medical certainty that the child's death was caused by blunt force traumas such as punching, kicking, stomping, or other similar type of crushing force to the body administered by another person.

Further, the child's aunt [] testified that [Appellant] had a history of physically abusing the victim and his mother [] prior to July 14, 2017.

Trial Court Opinion, 10/29/2019, at 2-3 (record citations omitted).

On January 10, 2019, a jury convicted Appellant of third-degree murder and endangering the welfare of a child. The trial court ordered a presentence investigation report and mental health evaluation. On March 15, 2019, the

trial court sentenced Appellant to an aggregate term of 20 to 40 years of imprisonment. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

1. Was the evidence insufficient to convict Appellant of [third-degree murder], as there was insufficient evidence to prove beyond a reasonable doubt that Appellant caused the death of the victim?

2. Was the evidence insufficient to convict Appellant of [e]ndangering the [w]elfare of a [c]hild, as there was insufficient evidence to prove beyond a reasonable doubt that Appellant endangered the welfare of the victim?

3. Did the [t]rial [c]ourt err by granting the Commonwealth's [Pa.R.Crim.P.] 404(b) [m]otion permitting the Commonwealth to introduce "other acts" evidence of violence allegedly committed by [] Appellant?

Appellant's Brief at 3.

Appellant's first two issues are inter-related, so we will examine them together.[4] Appellant claims that the Commonwealth failed to prove that Appellant was the perpetrator. He argues that "there was no direct evidence that Appellant committed these crimes" and "the Commonwealth failed to

_____

[3] Appellant filed a timely post-sentence motion seeking reconsideration of his sentence and arrest of judgment on March 22, 2019. The trial court denied relief by order entered on July 12, 2019. On August 9, 2019, Appellant filed a notice of appeal. On August 13, 2019, the trial court directed Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on September 3, 2019. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 29, 2019.

[4] Appellant even addresses both claims in his appellate brief "jointly since the arguments for each count are identical." Appellant's Brief at 13 n.1.

show that Appellant was alone at the time the offenses occurred." *Id.* at 12.

In sum, Appellant maintains:

> There is no specific time in evidence when the child's mother left the home, nor was she asked if she was [*sic*] aware if anyone else was with Appellant and child that morning. The Commonwealth presented no other evidence to show that Appellant was the only individual who had contact with the child that day, other than the evidence that he was in the home alone with the child when the police arrived. While the Commonwealth is permitted to prove its case with circumstantial evidence, the jury is not permitted to guess or speculate. Without any definitive evidence that Appellant was alone with the child when the injuries occurred, the evidence cannot be sufficient to [Appellant's] sustain convictions[.]

*Id.* at 17-18.

> We adhere to the following standards:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Slocum*, 86 A.3d 272, 275–276 (Pa. Super. 2014) (citation omitted).

Moreover,

[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa. Super. 2010). "Evidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citation omitted).

Our Supreme Court has stated that "any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564, 566 (1973) (citations omitted).

*Commonwealth v. Strafford*, 194 A.3d 168, 175–176 (Pa. Super. 2018).

Furthermore, our Supreme Court has previously determined that "[w]here [] an adult has sole custody of a child for a period of time, and, during that time the child suffers wounds which unquestionably are neither self-inflicted nor accidental, the evidence is sufficient to allow a jury to infer that the adult inflicted the wounds." *Commonwealth v. Paquette*, 301 A.2d 837, 840 (Pa. 1973). More specifically, in *Paquette*, our Supreme Court noted:

There was a dispute between the version [offered by Paquette's'] defense and that of the Commonwealth as to whether or not the child had bruised tissue at the time she was delivered into the custody of [Paquette]. Admittedly, the Commonwealth's evidence to support its position that all of the bruising occurred during the time the child was under his exclusive care was weak. [Our Supreme Court found,] however, [that] the medical evidence, offered by the Commonwealth [in that case], clearly establishe[d] repeated and severe blows to the infant as being the origin of the factors causing death. Such a finding [wa]s completely incompatible with the defense's theory that the injuries were either sustained by a fall from the couch to the floor or an epileptic fit while the child was in the bath. Considering the number of bruises, their severity and their positioning about the head and the face, the fact-finder was justified in rejecting the possibility of accidental or self-inflicted injury particularly when recognizing the mobility of a 6 [and] 1/2 month old baby.

*Paquette*, 301 A.2d at 839–840.

Here, on Appellant's sufficiency claims, the trial court determined:

Dr. Sam Gulino testified that the cause of death was blunt force trauma, and the manner of death was homicide. Further, he testified that it was a near impossibility for the child's injuries to have been caused by falling down a flight of stairs. Specifically, Dr. Gulino testified that the victim suffered no injury on or around his head, which would be expected when a child of similar age and physical development falls down a flight of stairs. In addition, Dr. Gulino pointed out that the extent of injuries the victim suffered in the last few hours of his life could not possibly have been caused by falling down a flight of stairs or the performance of CPR. Additionally, both Officer Nikolas Shannon and EMT Jermel Bowen, the men who performed CPR on the victim, had been trained to perform CPR properly.

Second, the police officers testified that only [Appellant] and the unconscious victim were on the scene upon their arrival. Indeed, it was [Appellant] who called 911 to alert the police to the emergency in this case. Therefore, the Commonwealth has proven beyond a reasonable doubt that [Appellant] was responsible for the injuries that caused the death of the victim.

Trial Court Opinion, 10/29/2019, at 5-6 (record citations omitted).

Upon review, we agree that there was sufficient evidence establishing Appellant was the perpetrator, because the Commonwealth established Appellant was alone with the victim at the time of the crimes. Initially, we note that Appellant does not challenge Dr. Gulino's testimony that the victim's death was not accidental but, rather, a killing by blunt force trauma. **See** Appellant's Brief at 13 ("The scientific evidence presented by the forensic pathologist certainly indicated that the child died as a result of blunt force trauma, but shed no light on who perpetrated these offenses."). Regardless, similar to **Paquette**, here, the Commonwealth presented forensic evidence that the victim's severe and fatal injuries were neither self-inflicted nor the result of an accident from failing down stairs.

Moreover, viewing the evidence in the light most favorable to the Commonwealth, as our standard requires, there was sufficient evidence proving that the victim was in Appellant's sole custody at the time of the crimes. The victim's mother testified that on the morning of the crimes, she left the victim alone in the residence with Appellant. **See** N.T., 1/9/2019, at 28-29; 36; **see also** N.T., 1/8/2019, at 220-225 (testimony that when the victim's mother saw the victim's body, she exclaimed that she should not have left the victim alone with Appellant when he was mad). When the victim's mother left the house, the victim was alive and uninjured. N.T., 1/9/2019, at 38. Appellant told police that the victim fell down the stairs and vomited on himself. N.T., 1/8/2019, at 71. Appellant also claimed that he bathed the

victim before calling 911. *Id.* Appellant was still talking to the 911 operator when the police arrived. *Id.* at 102-104. Finally, when the police arrived, Appellant told them that he was the only adult present in the residence and the police did not see anyone else. *Id.* at 105-106. Based upon all of the foregoing, there is simply no evidence that anyone else was present. Likewise, there is no record evidence that anyone else came to the residence before, or while, the crimes occurred or before the police arrived. Viewing all of the evidence together, the record clearly shows that the victim was in Appellant's sole custody at the time of the crimes and, thus, we conclude that the Commonwealth provided sufficient evidence to identify Appellant as the perpetrator.

Next, Appellant claims that the trial court erred by permitting the Commonwealth to present evidence of prior acts pursuant to Pa.R.E. 404(b). More specifically, Appellant challenges the trial court's decision to allow the Commonwealth to present the following evidence at trial: (1) testimony from the victim's grandmother that she saw bruises on the child in 2015 that Appellant claimed resulted from a fall; and (2) testimony and photographic evidence from the victim's maternal aunt that, in 2016, Appellant struck the victim and left bruises and, in another incident, Appellant engaged in a physical altercation with the victim's mother and hit her head against the wall, causing bruises. Appellant's Brief at 19. Appellant claims the admission of this evidence was erroneous for the following reasons:

[T]he Commonwealth, through its forensic pathologist, introduced graphic photographic evidence of the child victim and medical testimony that the child suffered terrible wounds such as visible bruising on the arms, chest and abdomen, potential bite marks on his abdomen and leg, a broken left tenth rib, deep internal bleeding, a lacerated and pulpified liver, and bruised and bloodied kidneys and pancreas. The pathologist was asked if the damage to the victim's liver could have been caused by a single punch, and he replied "It is possible. It would have to be a tremendously powerful punch because the amount of energy required to cause that much disruption of the liver could be delivered over multiple blows but it could also be over one much larger blow." It is completely illogical with the admissible medical and photographic evidence available that the Commonwealth "needed" the "other acts" evidence presented to be able to show malice with regards to this case. It begs credulity to claim that because Appellant had allegedly committed acts of violence against his wife and son, none of which were anywhere near as significant as what happened to this victim, that those acts tended to prove and were necessary to prove that he killed the victim with malice. The only purpose for seeking to introduce this evidence was to show that Appellant was a violent person: that he was allegedly violent in a significantly less serious manner with his wife and son previously, therefore he must have killed the victim here. This is propensity evidence which is absolutely inadmissible.

*Id.* at 20-21 (record citation omitted). Hence, Appellant claims "[t]he only similarity between these other acts and the crimes charged was that Appellant was the alleged perpetrator." *Id.* at 23. Appellant further contends that the trial court never stated which exception under Pa.R.E. 404(b) applied to this matter. *Id.* at 18-23.

This Court has previously determined:

The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or

partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

\*       \*       \*

Pennsylvania Rule of Evidence 404(b), pertaining to prior bad acts evidence, provides, in pertinent part:

\*       \*       \*

**(b) Crimes, Wrongs or Other Acts**.

(1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

(3) *Notice in a Criminal Case*. In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

This Court [has] determined:

Evidence of a defendant's distinct crimes are not *generally* admissible against a defendant solely to show his bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not *generally* proof of the commission of another. However, this general proscription against admission of a defendant's distinct bad acts is subject to numerous exceptions if the evidence is relevant for some legitimate evidentiary reason and not merely to prejudice the defendant by showing him to be a person of bad character.

Exceptions that have been recognized as legitimate bases for admitting evidence of a defendant's distinct crimes include, but are not limited to:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design such that proof of one crime naturally tends to prove the others; (5) to establish the identity of the accused where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "*res gestae*" exception).

Additional exceptions are recognized when the probative value of the evidence outweighs the potential prejudice to the trier of fact.

[…The] admission of distinct crimes may be proper where it is part of the history or natural development of the case, *i.e.*, the *res gestae* exception. […The] *res gestae* exception to the general proscription against evidence of other crimes, is also known as the complete story rationale, *i.e.*, evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.

Where the *res gestae* exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact. In conducting this balancing test,

courts must consider factors such as the strength of the other crimes evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

**Commonwealth v. Yocolano**, 169 A.3d 47, 53-55 (Pa. Super. 2017)

(internal case citations omitted) (emphasis in original).

- 11 -

In this case, the trial court balanced the strength of the 'other crimes' evidence, the similarities between the crimes, the time lapse between the crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and the degree to which the evidence would rouse the jury to overmastering hostility. *See* Trial Court Opinion, 10/29/2019, at 10-11. It determined that the other acts evidence introduced by the Commonwealth "proved motive, intent, common scheme and plan, as well as absence of mistake or accident in the death of the child." *Id.* at 11. The trial court also determined that the evidence "was part of a chain or sequence of events that formed the history of the case and were part of its natural development." *Id.*

Upon review, we agree. Initially, we reject Appellant's argument that the prior acts were not similar because they were not "nearly as significant as what happened to this victim." Appellant's contention suggests that only other prior acts that resulted in death would be admissible against him. Appellant does not cite any law, and our independent research has not revealed any, to support that proposition. Additionally, we conclude that the prior acts introduced at trial, Appellant striking and bruising the victim and the victim's mother on previous occasions and close in time to the crimes charged, were similar. Moreover, Appellant claimed that the victim died as the result of an accident. Therefore, the trial court properly admitted the other acts evidence to permit the Commonwealth to show an absence of mistake or accident. Further, we agree with the trial court that the evidence was part of the *res*

- 12 -

*gestae* of this case. The Commonwealth was permitted to show a history of escalating physical abuse as part of the natural development of this case. We discern no abuse of discretion or error of law in admitting the Rule 404(b) evidence in this matter.

Finally, the trial court instructed the jury that it allowed the admission of the above-mentioned evidence for a limited purpose under the *res gestae* exception to Pa.R.E. 404(b). **See** N.T., 1/9/2019, at 168-169. "It is well- settled that the jury is presumed to follow the trial court's instructions." **Commonwealth v. Cash**, 137 A.3d 1262, 1280 (Pa. 2016). Accordingly, Appellant is not entitled to relief on his final claim.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/20